Good morning, Your Honors. My name is Carl Gunn. I represent both Mr. Augustine and Mr. Martinez. I'm going to try to reserve three minutes for rebuttal. Okay. Thank you. With your instructions, I'll try to keep track of my time. The first point I think I want to make, Your Honors, is that Baptist and Sykes do not resolve the issue that's presented in this case. Probably the most important rationale for the Supreme Court decision in Dorsey was that Congress didn't mean, if I can use a metaphor, to mix apples with oranges. The apples being the pre-Fair Sentencing Act mandatory minimums and the oranges being the Fair Sentencing Act guidelines. Baptist and Sykes weren't mixing apples with oranges because the guidelines that had been used in both those cases were pre-Fair Sentencing Act guidelines. Well, now, if you look at the circuits that, because you're asking to look post-Dorsey, if you look at the circuits that have interpreted the argument that you're making, haven't they all gone against you? No. And it seems that one of them was denied by the U.S. Supreme Court, too. It is correct that there's several decisions out there, Your Honor. I don't think they're very persuasive for a number of reasons. Well, so, but what you're saying, I guess, is we would be creating a split in the circuit, correct? Well, you would possibly. At least the Seventh Circuit has a holding the other way. I'm not sure the Eleventh Circuit does because the Eleventh Circuit apparently doesn't view barriers controlling since it denied a motion to submit without oral argument, as you know from the supplemental authority letters you've gotten. So you're creating a split in the circuits vis-à-vis one other circuit. The Eleventh may end up doing that on its own already when it hears oral argument in the HIPAA-like case that's pending. So just so that I'm clear, you're saying that Barry is not precedent because there was a denial of a request to submit on the brief? Well, Barry is actually victim, arguably, because it's an alternative holding. The defendant there, as I recall, was a career offender, so he didn't have any relief anyway. But there was a motion made in the HIPAA-like case in which oral argument is pending to basically summarily affirm based on barriers controlling precedent, and it was denied. So apparently there is a panel, at least in the Eleventh Circuit, that doesn't view Barry necessarily that way. Rather than try to read the tea leaves from a denial of motion submission on the briefs, let me understand your position. You say Baptist and Sykes are not controlling, and I take it because of the intervention of Dorsey. Well, actually, even without Dorsey, of course, we already below they're not controlling. They're not controlling because the premise upon which Dorsey relied and upon which we're relying is that the fair implication of the Fair Sentencing Act is that the statutory mandatory minimums were to go with the fair sentencing. The Fair Sentencing Act mandatory minimums were to go with the Fair Sentencing Act guidelines. So let me just say, and that's, we have to focus on the Act. Correct.  Fair implication of the Act. What do we do with the Savings Statute, which is what Baptist and Sykes turned on? The Savings Statute seems to say statutes don't apply retroactively unless Congress says so. Well, unless there's a fair implication from the Act. Our position is Baptist read this Act before Dorsey, which dealt with a different factual situation than we have here. Baptist read this Act and said we don't think this Act was meant to apply retroactively. So what did the Supreme Court say in Dorsey? It seems to me we're stuck with Baptist and Sykes in terms of their reading of the intention of the Act with respect to retroactivity unless the Supreme Court has taught us something differently in Dorsey. Correct. So tell us what it taught us differently in Dorsey. Okay. It pointed to four considerations, and those four considerations didn't exist in Baptist and Sykes. The four considerations were this, and they actually have a first consideration that's just the standard and a sixth consideration that there's nothing contrary. The four considerations were this. The first one was that there's a background principle of retroactivity that was there in the Sentencing Reform Act. In the Dorsey situation, that was 3553A4C, I think, little Roman numeral 3, which said you apply the sentencing guidelines in effect at the time of sentencing. You basically have this sort of indirect retroactive effect from that provision of the guidelines. Here you have the same thing. In fact, you have something even stronger. 3582C2 expressly says you apply guidelines retroactively. Then the second consideration, Your Honor, that combined with that, that again didn't exist in Baptist because Baptist wasn't applying the new guidelines or Sykes. The second consideration was the language of the Fair Sentencing Act, the provisions in the Fair Sentencing Act. There were at least three of them that suggested Congress wanted the guidelines and the statutory and mandatory minimums to go together. It told the commission to, as soon as practicable, create new guidelines. It commanded that those guidelines be conforming to the statutory and mandatory minimums, and it commanded that those guidelines be consistent with the statutory and mandatory minimums. But what do we do within the language in Dorsey where the Supreme Court recognized it was creating a new disparity between those pre-Act offenders already sentenced and those not sentenced? If the Act applies to pre-Act offenders already sentenced, why didn't the Court recognize it in Dorsey? Because that issue wasn't before the Court in Dorsey, the same way I know Your Honor argued the Ring v. Arizona case, the death penalty situation wasn't before the Court in Apprendi. It wasn't before the Court there. Unless and until the Sentencing Commission chose to make the guidelines retroactive, there was nothing the Supreme Court could do about the people who had already been sentenced. Well, can the Sentencing Commission's making of the guidelines retroactive  No. What gives you an indication of Congress's intent, Your Honor, is the fact that they emphasized in the statute the desire to make the guidelines in the statute be conforming in consistency. The fair implication of that is they wanted the new statutory and mandatory minimums to go with the new guidelines. And there's no reason to think they didn't want that in the 3582C2 context any more than they didn't want it in the other context. And you get the same sort, the fourth and fifth considerations in Dorsey. You get the same sort of absurd results. If I can use the statutory interpretation principle term, you have people being sentenced on the same day, or not sentenced on the same day. You have people with 3582C2 motions in court on the same day. One gets his sentence reduced by half. The other doesn't get any reduction at all because one was sentenced on August 2, 2010, and the other was sentenced on August 4, 2010. You get a person who has 4.99 grams of crack in court on his motion and a person who has 5 grams of crack in court on his motion on the same day. One gets no reduction at all. The other gets his sentence cut in half. You get a defendant in court on the same day. All those examples. I think we all understand the arbitrary results that occur. Right. And those were the fourth and fifth considerations that drove the fair implication conclusion in Dorsey. So all four of those considerations have the same fair implication here. But wouldn't your – I take it the upshot of your argument is that everybody in the country, if we were the Supreme Court, everybody in the Ninth Circuit at least, who was sentenced before the effective date of the act, would nonetheless be entitled to have their sentence reduced. Well, not entitled because it's in the discretion of the district court, of course. Right. But they'd be entitled to come back in court later. To be entitled to make a motion. Which is totally consistent with what Congress was concerned about fairness. The Department of Justice was concerned about fairness. The whole underlying purpose is this act is a concern about fairness. There is certainly nothing in terms of policy that would say that's a bad result. In terms of policy, that's probably exactly the result everyone would like to see. Granted, you, Your Honors, don't get to make policy. Your Honors have to interpret the statute. But after Dorsey, it's what the fair implication of the statute was. And if I go back to Baptist and Sykes, Your Honor, they don't deal – none of those considerations or very few of them apply, and it's certainly not in this dramatic a way. The defendant in Baptist had the old guidelines and the old statute. I think Judge Okuda has a question. She's waiting for you to take a breath. I'm sorry. And one of my problems is it seems like our cases, including Sykes, which is in the 3582C context, and the other cases, the Supreme Court cases and our cases, are all consistent with the rule that you apply the version of the Fair Sentencing Act that was enforced at the time of the sentencing. And, of course, 3582C is not a resentencing. It's merely a modification. So under your theory, we'd have to say, well, under a modification that could allow us to look at the current guidelines, it has to pull a different sentencing act than was in effect on the date the defendant was sentenced. And I'm concerned about that being very different from the consistent cases and rules that we have right now. I think you just have to look at it a little bit differently, Your Honor. And after Dorsey, it's the way that – Dorsey is consistent with the rule I just said, right? Right. The version of the Sentencing Act that was in effect at the time of the sentencing. But Dorsey and all the other cases are also perfectly consistent with another view. And I think this is the view that is more consistent with the rationale of Dorsey, and that is that the statutory mandatory minimums that apply are the ones that go with the guidelines that are being applied. Is there any case or any principle in the guidelines or in the Supreme Court that would say the guidelines drag the statute? Because normally we would look at the statute and be bound by the statute. Well, I think the reasoning of Dorsey does it. The reasoning of Dorsey says Congress was concerned about consistency and conformity between the guidelines and the statutes. And because of that, there was a fair implication that Congress wanted the statute to apply when the guidelines apply. But then why would they have said the language that I said, that we recognize we're creating a new disparity between those in the pre-act offenders and those already – those not yet sentenced? At that time they – well, first of all, they were, because the people already sentenced had that disparity and they couldn't correct it right there. And second, at that point, the guidelines weren't retroactive. And unless and until the Sentencing Commission made them retroactive, there wouldn't be a way for those defendants to even come back. That gets back to the point I asked you at the beginning. It seems to me that post hoc making them retroactive by the Sentencing Commission can't really affect Congress's intent, can it? In other words, we have to interpret what Congress meant when it passed the Fair Sentencing Act, not what the Commission meant somewhat later when it made the guidelines retroactive. That's correct. And it's not what the Commission meant about the mandatory minimums that matters. It's what Congress meant. Exactly. But Congress – what I think Dorsey suggests is that Congress meant that the new statutory – that there'd be a match between the statutory mandatory minimums and the guidelines. You're right. And if the guidelines were later made retroactive, that match would consider. If I could make one more point, and then I will step down. Oh, there's your time. Thank you. Now it's slipping out of my mind here. That match is what Congress wanted, I think, is the key point. And that's what the reasoning of Dorsey, I think, leads to. So I'll save the rest of my time for rebuttal. Thank you. Good morning. Good morning. Jean-Claude André on behalf of the United States. I think these cases are a lot simpler than the briefing, including my briefing, and Mr. Gunn's arguments would make them appear. 3582 has effectively two buckets for applying ameliorative changes to affect and reduce a sentence. C-1B deals with statutes. C-2 deals with guidelines. The defendants in these cases brought C-2 motions but sought both forms of relief, relief under a statute and relief under the guidelines. Now, we're not taking the position that by mispleading their request for relief, they've somehow waived it. But, you know, courts all the time will construe a motion seeking A as a motion really seeking B or a motion seeking A as a motion seeking A and B. And, in fact, the courts did in this case. I guess effectively, yes. But what matters is that as I recall what the district judge said in at least Mr. Augustine's cases, I wish I could do more, but I can't. Right. So he assumed he was seeking it under the statute. Well, yes. Because I can't give him the statute. Right. But the key distinction, because, you know, the defendants have been focusing on the fair implication that Dorsey recognized and then analogizing to this situation. Fair implication, necessary implication, that's not the standard under the appropriate test or in the appropriate bucket of C-1B. C-1B requires an express statement. And we don't have that here. Dorsey didn't recognize it. Baptist didn't recognize it. And at that point, I think we're done. Well, I have some difficulty with that argument. I need you to explain it to me. There is an express statement in the Fair Sentencing Act which reduces the mandatory minimums. Correct. The question is whether or not that reduction in mandatory minimums is retroactive. That's correct. And so I think I thought that all that C-1B required was that there be a clear change in the statute that, if applied to this defendant, would reduce his sentence. Isn't that all that C-1B requires? No. C-1B requires an express statement of retroactivity because it's against the backdrop of the overall ---- So your position is that even if the Act were fairly read as requiring retroactivity, that would not be enough unless Congress expressly said so? Yes. It's a more demanding standard now because we're ---- and I guess I'll take a step back if I could in answering that question. Before 1984, before we had 3582 on the books, judges could revisit sentences quite liberally. They could do so up to 120 days after all appeals were exhausted in the federal system. And with 3582, Congress effectively doubled down on making sure that criminal judgments and criminal sentences were untouchable except in limited enumerated circumstances, which we then have in Subsection C. So against that backdrop where now a criminal judgment is even harder to pierce, almost like sovereign immunity, that you do need that express statement because ---- Well, but if it says the purpose of the Fair Sentencing Act is a reduction of sentence or reducing the reduction of sentencing disparities between defendants convicted of crack cocaine and offenses versus those convicted of powder cocaine offenses, right? So wouldn't that purpose be furthered by applying the Act to previous sentence defendants? It could be. I mean, the problem is that that's, well, first of all, it's the preamble, so it doesn't carry as much interpretive weight as the actual operative text of the statute. But that's not a statement of retroactivity. That's just a statement of what the goal is. So here's my difficulty with that. I understand that we have a savings statute, but you're making a different argument. I mean, we made both in the brief. I understand. But the argument you're now making is that no judge can ever reduce a sentence under C-1 unless Congress has said, Judge, we want you to go back and reduce the sentences. Yes. And is there any case that says that? I mean, your opponent has a difficulty in that no case says his position, so I guess I'm asking you the same question. Is there any case that says that? I'm not aware of one beyond a district court decision called Bradley. I forget what district. It's a recent, unpublished one, but where the district court went through that mode of analysis. Let me then ask you the question that Judge Callahan was asking. We know what Congress was about here. It realized that it had made a big mistake treating crack cocaine the same as powder cocaine, and it set out to correct that situation. And it gave the Sentencing Commission broad powers. It told them to change the guidelines. It told them to change the statute. Isn't it a fair reading of what Congress was about here, is that they wanted to, in effect, give judges the ability to correct injustices that had occurred in the past because of a misperception Congress had about the equivalency of the two, in terms of weights and things like that? Yes. It's a fair reading because the statute is silent as to where it applies. And the Supreme Court now has, of course, said that it applies as of August 3rd, 2010. And so it really is not so much about, Dorsey's really not so much about retroactivity. It's really about immediacy. And what Dorsey was doing is they were looking at the statute and trying to reconcile Section 2, which is the provision that lowered the mandatory minima, and Section 8, which was the directive to the Sentencing Commission. What's critical there is that Section 8 didn't talk about making the guidelines retroactive at all. Section 8 just said giddy up, Sentencing Commission, prepare some conforming guideline amendments and get them on the books. The Sentencing Commission took it upon itself to make the guidelines expressly retroactive. And, in fact, in Amendment 759 on page 419 in the Black Appendix book, if you were to look at it, they say the statute is not retroactive and does not apply. So at the same time, an exact same amendment that the Sentencing Commission was making its guidelines retroactive, again, on its own, not pursuant to congressional directive. They also were saying that the statute doesn't go with it. So, you know, neither of those. Roberts. But I take it that neither of those really helps us interpret the statute because they occurred after the statute was passed. Goldstein. Well, right. As far as, well, it shows, I guess, Dorsey's limits. Because, yes, those events happened after the statute was passed. And so you have to look at the statute. But the fact that the statute did not include a statement about making the guidelines retroactive does tell us something. That Congress didn't intend the statute to go back and back and back and be maximally retroactive and apply to every crack defendant still in custody. So your government position, effectively, is that Congress meant to solve some injustices but not all? Yes. I mean, you know, the – I think it's Glen Calvis' case out of the First Circuit recognized that this was compromise legislation. I mean, you know, reducing crack penalties was debated for years. You know, obviously, we went to the Supreme Court in Kimbrough, came back to Congress, was debated over and over again. There were bills proposed with express savings provisions. There were bills proposed that were expressly retroactive. Neither of those became the final bill or final law. Instead, we have this, as Glen Calvis says, compromise legislation where they settled on an 18-to-1 ratio as opposed to a 1-to-1 ratio, and they said nothing about retroactivity. But that silence, again, particularly against the backdrop of the presumptive unpermeability of a criminal sentence, means that the district court can't – or a district court can't make this statute retroactive here. So if there had been an error in the sentence, say, and the appellate court had vacated it and then the individual was resentenced, would the current lower or less disparate version of the Federal Sentencing Act, would that apply to that resentence? I'm not aware of a case addressing that, but it's the Department's position that it would. In fact, there was a case that we had before. But it would – I don't understand that it would. That means they could get the benefit? Yes, because a remand for resentencing, a plenary resentencing is – It's like you start again. It's effectively a sentencing, and therefore – A sentencing, so that the statute, the current statute would apply to the sentencing. And so – but under 3582C, we're just limited to – it's a modification, and so we're limited to whatever 3582C allows by way of modification. Exactly. So when you say this has the Department said that other than that they told you you could say it, in preparing for oral argument, or – No, it's actually in writing in a case called United States v. Kim Dion Brown. They say we handled Baptist, and that was crack day here at the Ninth Circuit. We had four cases together. One of those was a government affirmative appeal, Kim Dion Brown. And we were urging reversal of the below man-min sentence. And while it was under submission, the Department changed its position on the cutoff date for the FSA. And so I filed a motion seeking to voluntarily dismiss that appeal on the basis that even if we won and convinced this Court to vacate, remand, and tell the district court to resentence, at that resentencing, we would concede that the FSA should apply because it's fine. And I applaud the Department's position on that. But without discouraging you from taking that position in cases, doesn't that create even a bigger arbitrary disparity? A judge makes some mistake. It may not be an important one, but we say go back and look at this again, and that defendant gets the benefit of the new guidelines, but the judge who did it right but would have given the defendant far less had he or she had the ability to, doesn't have the ability to. I mean, we are creating you do admit we're creating incredibly arbitrary distinctions here, are we not? I think every line that's been drawn in this context has some arbitrariness to it. And it's just a question of where do you have to put the line. People commit the same crime on the same day, and one gets sentenced on August 30th, and the other one gets sentenced on September 1st, and one of them is subject to the lower statutory and mandatory minimums, and the first one is not. It happens, but, I mean, the exception, I don't think, can drive the rule. And, you know, we are constrained in 3582C proceeding by the strictures of that statute. C-1B says you can plug in an expressly retroactive statute. C-2 says you can plug in an expressly retroactive guideline. Dillon, in interpreting 3582C, says you keep everything else the same. And so, you know, given that we don't have an expressly retroactive statute and that that then the old man min is a floor below which, you know, the sentence can't fall, there's nothing to be done in this context. And it will create an occasional disparity, but there already are disparities. And Dorsey was certainly comfortable with that. And, frankly, so was this court in Baptist and Sykes and apparently Pleasant as well. And speaking of Pleasant, how does our language in Pleasant indicating that the 3582C analysis is jurisdictional, how does that affect our analysis here, if at all? Well, I think that Pleasant and its interpretation of Austin and Justice Sotomayor's concurrence in Freeman makes the based on argument that we have in our briefing more difficult for us, which is why I'm not focusing on that here today. I'm not abandoning it. But ultimately, the district court's power to modify a sentence, it's a jurisdictional matter. And 3582 gave district courts this limited amount of jurisdiction to, again,  And so if a defendant's request for modification doesn't satisfy the strictures of 3582, then the district court is without jurisdiction to modify the sentence. And so that kind of mode of analysis would apply whether it's a defendant who can't even get in the door, like Martinez. So in Martinez, you'd say the district court lacked jurisdiction, whereas in Augustine he had because he had the month, he made the month reduction. Right. So in Martinez, the district court lacked jurisdiction altogether. In Augustine, the district court lacked jurisdiction to do more than what it did is, I guess, the way I tried to. Probably lacked the power to do more than what it did as opposed to jurisdiction. It's sort of a strange thing to say you have jurisdiction to do something that you can, but no jurisdiction to do something that you can't. That doesn't strike me as a jurisdictional concept. I mean, well, that's why we analyze it in terms of, you know, Congress in 3582 was conferring jurisdiction in a limited sense, maybe, you know, drop by drop. And you just have to figure out whether, you know, your case can go with the drop into court. What if, given the language in C-2 and the language of the savings statute, which controls? In other words, the language of the savings statute seems to leave open the possibility that something is retroactive if you could fairly read it from an act. Right. And C-2 says expressly. Right. Which controls here? This is a C-1B case, not a 109 case. I'm sorry. Not a 109 case. I mean, you know, it's right. So was our reliance in Baptist and Sykes on? No. There it was right because those were still pending prosecutions. They were the defense had been sentenced. The case were on direct appeal in the Griffith v. Kentucky sense. And so those are 109 cases, just like Dorsey's a 109 case. This is a C-1B case. And it is a different standard. So then if I understand your position correctly, the Savings Act really doesn't apply here. Does not apply here. That is correct. That is our position. The statute requires an express provision of? Yes. Yes. And, I mean, of course, even if the court were to disagree and say that, you know, this wasn't not a C-1B case or that C-1B's expressly permit language didn't apply, we think we still would win if you were to engage in the Dorsey analysis here because of the silence of Section 8 of the FSA with respect to retroactivity. I mean, the caboose can't be dragging the train here, and that's effectively what's happening or what the defense's position is in suggesting that the sentencing commission's sua sponte decision to make these guidelines retroactive then somehow brings the statute backward. And if the panel has no further questions, I'm going to wrap it up. No further questions. Thank you. Thank you. And I think this C-1B, C-2 distinction is really a red herring here. We're back in court under C-2. You're there under the retroactive guidelines, and there's a mandatory minimum layered on top when you get into court. The question is which mandatory minimum's layered on top. That is a question of the Fair Sentencing Act's fair implication. I think Your Honor, Judge Hurwitz sort of hit it on the head when you asked a question, isn't it a fair reading? The words fair reading are basically, I think, the same as fair implication. There is that fair implication here. Granted, we're not back in court on a resentencing. We are back in court on a new proceeding, and I think we have a category of defendants here that hasn't been addressed in any of the other cases. And I think what we have is the question of whether the Fair Sentencing Act's fair implication is the new mandatory minimum should apply here. I think that is the fair implication or fair reading. With respect to Baptist not being controlling, Mr. Andre mentioned the Goncalves case, if I'm pronouncing it correctly, from the First Circuit. That brings to mind something I want to remind the Court of that we put in our briefs. The First Circuit itself in the Douglas case, which is one of the cases that Dorsey approved in the split in the circuits, Douglas acknowledged that the Goncalves case, which is exactly like the Baptist case, but a First Circuit case instead of Ninth, it acknowledged that it was not yet resolved whether or not the new mandatory minimums would apply in the 3582C2 context. So the one case out there that is considered whether a Baptist type of case is controlling on this issue has opined that it doesn't. It noted that as one of the remaining set of unresolved problems. Your Honors have an unresolved problem that you have to resolve. I would submit that the fair implication and fair reading of the Fair Sentencing Act is they don't want this absurd result of mixing apples and oranges. They want the apples to go with the apples, the oranges to go with the oranges. The Fair Sentencing Act statutory mandatory minimums to go with the Fair Sentencing Act guidelines, wherever that may be. Thank you both for your argument. This matter will stand submitted. I think you both did. I'd like to thank both of you for your excellent arguments. You both clearly understand the issues and the implications of the arguments that you're making. And I don't want to say it's unusual, but I think that you both did an unusually excellent job.
judges: Callahan, Ikuta, Hurwitz